O

# United States District Court
# Central District of California

| | |
|---|---|
| NATIONAL PUBLIC RADIO, INC., et al.,<br><br>                    Plaintiffs,<br><br>          v.<br><br>U.S. INTERNATIONAL DEVELOPMENT FINANCE CORPORATION,<br><br>                    Defendant. | Case № 2:20-cv-08307-ODW (JCx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT [28] [29]** |

## I. INTRODUCTION

Plaintiffs National Public Radio, Inc., and Tom Dreisbach (collectively, "NPR") bring suit under the federal Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against Defendant International Development Finance Corporation ("DFC"). After DFC announced its intent to loan $765 million to the Eastman Kodak Company to support manufacturing ingredients for COVID-19 drugs, NPR requested related records under FOIA. When DFC failed to timely respond, NPR initiated this action.

The matter is now before the Court on DFC's Motion for Summary Judgment and NPR's Cross-Motion for Summary Judgment. (Def.'s Mot., ECF No. 28; Pls.'

Mot., ECF No. 29.) For the reasons that follow, the Court **GRANTS IN PART and DENIES IN PART** each of the two Motions.[1]

## II. BACKGROUND

The parties agree on all material facts. The DFC is a U.S. government agency created in early 2020 as successor to the Overseas Private Investment Corporation ("OPIC"). (Def.'s Opp'n 11, ECF No. 30); *see Byrd v. Global Recovery Grp., LLC*, No. SA-20-CA-1020-FB, 2021 WL 2678662, at *1 (W.D. Tex. Feb. 22, 2021). "As part of its mission, like OPIC, [DFC] offers loan financing, among other things, to United States investors for specified approved projects in the developing world." *Byrd*, 2021 WL 2678662, at *1.

On May 14, 2020, then-President Donald Trump signed an Executive Order delegating authority to the DFC to make loans to private institutions to support the government's national response to the COVID-19 outbreak. (Compl. ¶ 2, ECF No. 1.) Pursuant to this authority, DFC decided to loan $765 million to Kodak to support the launch of Kodak Pharmaceuticals, which would produce "critical pharmaceutical components." (*Id.*) DFC employees prepared an op-ed announcing this decision, and on July 28, 2020, the op-ed was published in the *New York Post*. (*See* Decl. Eric T. Styles ("Styles Decl.") ¶ 11, ECF No. 28-1; Def.'s Mot. 8.) After an inquiry from Senator Elizabeth Warren and the initiation of a SEC investigation, on August 7, 2020, DFC placed the loan to Kodak on an indefinite hiatus. (Compl. ¶ 2.)

Amidst this flurry of activity, on July 31, 2020, NPR submitted to DFC a FOIA request for three categories of records related to the loan to Kodak. (Compl. ¶¶ 4, 11; Styles Decl. Ex. A.) As of September 10, 2020, DFC had not yet produced any documents in response to NPR's request, and NPR proceeded to file this suit. (Compl. ¶¶ 14, 17.)

---

[1] Having carefully considered the papers filed in connection with the motion, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

Since then, DFC has produced documents and amended its document production several times, releasing a total of forty-four pages in whole or in part and withholding sixteen pages. (Decl. Thomas R. Burke ("Burke Decl.") ¶¶ 3–6, ECF No. 29-1; Styles Decl. Ex. B ("Produced Records").) On April 30, 2021, DFC filed its Motion for Summary Judgment seeking a determination that it had fulfilled its obligations under FOIA as to four challenged document categories covering all documents remaining in dispute. (*See* Def.'s Mot.) NPR filed a combined Opposition to DFC's Motion and Cross-Motion for Summary Judgment, seeking a determination that DFC failed in its obligations under FOIA. (*See* Pls.' Mot. 2.) Thereafter, DFC filed a combined Reply brief for its own motion and Opposition to NPR's Cross-Motion. (Def.'s Opp'n.) Finally, NPR filed a Reply. (Pls.' Reply, ECF No. 31.)

NPR also filed, concurrently with its Cross-Motion, a request for in camera review of documents to determine whether DFC may properly withhold the documents under any FOIA exemption. (Req., ECF No. 29-6.)

### III.   LEGAL STANDARD

"Most FOIA cases are resolved by the district court on summary judgment, with the district court entering judgment as a matter of law." *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016) (en banc). The "usual summary judgment standard" applies in FOIA cases. *Cameranesi v. Dep't of Def.*, 856 F.3d 626, 636 (9th Cir. 2017). Summary judgment is appropriate only if, after viewing the evidence in the light most favorable to the non-moving party, there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "if there are genuine issues of material fact in a FOIA case, the district court should proceed to a bench trial or adversary hearing." *Animal Legal Def. Fund*, 836 F.3d at 990. The district's court's review of the agency's decision is de novo, and the agency bears the burden of persuasion. 5 U.S.C. § 552(a)(4)(B).

## IV. DISCUSSION

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). FOIA "focuses on the citizens' right to be informed about what their government is up to" by requiring the release of "[o]fficial information that sheds light on an agency's performance of its statutory duties." *U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (internal quotation marks omitted).

"Upon request, FOIA mandates disclosure of records held by a federal agency unless the documents fall within enumerated exemptions." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 7 (2001) (internal citations omitted); *see* 5 U.S.C. § 552(b). The Act provides nine narrowly construed exemptions "reflect[ing] a recognition that 'legitimate governmental and private interests could be harmed by release of certain types of information.'" *Am. Civil Liberties Union of N. Cal. v. U.S. Dep't of Just.*, 880 F.3d 473, 483 (9th Cir. 2018) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). An agency may withhold only exempted information and must provide all "reasonably segregable" portions of that record to the requester. 5 U.S.C. § 552(b). The agency bears the burden to justify withholding under FOIA's exemptions and to "establish that all reasonably segregable portions of a document have been segregated and disclosed." *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 779 (9th Cir. 2015) (quoting *Pac. Fisheries, Inc. v. United States*, 539 F.3d 1143, 1148 (9th Cir. 2008)).

"Government agencies must submit an affidavit pursuant to *Vaughn* [*v. Rosen,*] 484 F.2d 820 [(D.C. Cir. 1973)], identifying the documents withheld, the FOIA exemptions claimed, and a particularized explanation of why each document falls within the claimed exemption." *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 986 (9th Cir. 2009) (internal quotation marks omitted). An agency's declarations are

given substantial weight in determining whether a FOIA exemption applies, and agencies are not required to specify their objections to disclosure "in such detail as to compromise the secrecy of the information.'" *Bowen v. U.S. Food & Drug Admin.*, 925 F.2d 1225, 1227 (9th Cir. 1991). "Agency affidavits that are sufficiently detailed are presumed to be made in good faith and may be taken at face value." *Hamdan*, 797 F.3d at 779.

Here, the parties agree that only four document categories are at issue, and that the at-issue documents implicate only FOIA Exemption 5. (Styles Decl. ¶ 8; Burke Decl. ¶ 10.) Exemption 5 shields from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The Supreme Court has clarified that Exemption 5 operates to exempt documents that would be privileged in the civil discovery context. *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see United States v. Weber Aircraft Corp.*, 465 U.S. 792, 800 (1984) ("[T]he public is entitled to all such memoranda or letters that a private party could discover in litigation with the agency.").

The parties further agree that only one privilege within Exemption 5 remains at issue: the deliberative process privilege. (Def.'s Mot. 5; Pls.' Mot. 1); *Pac. Fisheries*, 539 F.3d at 1148 (confirming FOIA Exemption 5 incorporates deliberative process privilege). DFC asserts that this privilege applies to all four categories of disputed documents, (Def.'s Mot. 8–11), and NPR asserts it does not, (Pls.' Mot. 9–18). At trial, DFC would bear the burden of showing the privilege applies, *Hamdan*, 797 F.3d at 779, and since a party's burden on summary judgment is the same as what its burden at trial would be, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986), resolution of both DFC's Motion and NPR's Cross-Motion comes down to the same issue for the Court to decide: whether DFC has established the existence of the deliberative process privilege shielding each category of documents from mandatory disclosure. *See id.* at 322. If it has not, then as to that category, the Court denies

DFC's Motion, grants NPR's Cross-Motion, and orders disclosure. If it has, then the Court proceeds to determine if there is a triable issue as to whether disclosure of the documents would cause DFC reasonably foreseeable harm. 5 U.S.C. § 552(a)(8)(A).

## A.  Deliberative Process Privilege

The deliberative process privilege "protects from disclosure opinions and recommendations on which governmental decisions are based." *Playboy Enters., Inc. v. Dep't of Just.*, 677 F.2d 931, 935 (D.C. Cir. 1982). Its purpose is "to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Klamath Water Users*, 532 U.S. 1, 8 (2001). The privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Id.*

To show that the deliberative process privilege applies, it is DFC's burden to show that a record is both (1) "predecisional" and (2) "deliberative." *F.T.C. v. Warner Commc'ns, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984). "Documents are 'predecisional' if they were generated before the agency's final decision on the matter, and they are 'deliberative' if they were prepared to help the agency formulate its position." *U.S. Fish & Wildlife Serv. v. Sierra Club*, 141 S. Ct. 777, 786 (2021); *Warner Commc'ns*, 742 F.2d at 1161 ("[T]he document must be deliberative in nature, containing opinions, recommendations, or advice about agency policies.").

With these standards in mind, the Court considers the four at-issue categories of documents in two groups, starting with all documents in Categories 1, 2, and 4.

## B.  Categories 1, 2, 4

Document Category 1 consists of drafts of the aforementioned op-ed the DFC published in the *New York Post* announcing its loan to Kodak. According to Eric T. Styles, administrative counsel in the Office of General Counsel of the DFC, these drafts "are unsigned and unfinalized, and include editorial mark-ups, comments,

redline revisions, and comments made by DFC and inter-agency employees reflective of the deliberative process." (Styles Decl. ¶ 11.)

Document Category 2 consists of email correspondence about the *New York Post* op-ed. Styles indicates these emails are "between interagency stakeholders engaged in deliberative discussions regarding development and editing of the draft op-ed documents" and are "predecisional to the final op-ed." (Styles Decl. ¶ 13.)

Document Category 4 consists of email correspondence discussing "messaging, themes, and engagement with media" related to the loan. The subjects of these emails are (1) how to engage with the media and associated stakeholders about an upcoming press event; (2) which officials would speak at the upcoming event; (3) messaging, themes, and points to highlight in several upcoming media engagements regarding the Kodak announcement; and (4) whether and how to respond to press queries regarding the Defense Production Act's grant of loanmaking authority to DFC. (Styles Decl. ¶ 15.)

The parties agree that the documents in Categories 1, 2, and 4 do not precede any substantive policy decision regarding any loan that DFC might have made in the future, and that rather, these documents relate entirely to how DFC would announce its decision about the Kodak loan to the public. (*See* Def.'s Opp'n 1 (characterizing documents as "agency deliberations about transparency and public messaging"); 2 ("[T]hese documents . . . are discussing specific yet-to-be-made decisions about what the messaging should be about the loan at issue."); Pls.' Mot. 11 ("[T]hese materials are clearly public relations, i.e., the DFC 'setting forth the reasons' for its already-made decision to make the loan.").) Thus, the legal issue the parties' Motions ultimately raise is whether deliberations about how an agency will communicate an already-made policy decision to the public are protected by the deliberative process privilege.

Whether the Court follows Ninth Circuit precedent or resorts to "first principles," (Def's Opp'n 3, Pls.' Reply 5), the answer to this question is "no."

"[P]ost-decisional records fall outside the deliberative process privilege if they follow a final decision and are designed to explain a decision already made." *Lahr*, 569 F.3d at 981. Here, no one disputes that Categories 1, 2, and 4 are more in the character of documents that "follow a final decision" (here, the decision to loan money to Kodak) "and are designed to explain a decision already made" (here, in a *New York Post* op-ed) rather than "documents prepared in a subsequent evaluation of the question with the goal of confirming or rejecting . . . earlier conclusions." *Id.* at 981; (Def.'s Opp'n 2). This case stands in clear contrast to *Lahr*, where the challenged documents were predecisional to the agency's core policy function of making factual findings about what happened during the fatal crash of TWA Flight 800. *See id.* at 983 ("[T]he document . . . was clearly prepared for the specific purpose of aiding the agency in its determination of the likely flight path of the aircraft following the explosion, a determination central to the CIA's task of explaining what the eyewitnesses actually saw."). Here, DFC's draft op-eds do not aid it in making any policy decision and are therefore not "predecisional" for purposes of the deliberative process privilege. *See also Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1094 (9th Cir. 1997) ("We are required to reject the government's primary argument that a continuing process of agency self-examination is enough to render a document 'predecisional.'").

DFC confronts this issue head-on and argues that agency decisions regarding public messaging *should* be subject to the deliberative process privilege. However, in light of *Lahr* and *Maricopa Audubon Society*, courts in the Ninth Circuit have repeatedly reached the opposite conclusion, finding that it is only when the agency is deliberating *substantive policy decisions* that the deliberative process privilege applies and refusing to apply the privilege when the deliberations do not precede policymaking. *See Council on Am.-Islamic Relations-Wash. v. U.S. Customs & Border Prot.*, 492 F. Supp. 3d 1158, 1166 (W.D. Wash. 2020) (ordering release of internal communications which "do not appear to have been prepared in order to assist

in the making of a decision, and instead relate to the release of a public-facing statement describing events after a decision was made"); *Chattler v. United States*, No. C-07-4040 MMC (EMC), 2009 WL 1313227, at *2 (N.D. Cal. May 12, 2009) (observing, for purposes of deliberative process privilege, that "preparations related to testimony before Congress or statements to Congress or the public (including press releases) . . . do not seem to be decisions akin to policymaking"); *see also Mansourian v. Bd. of Regents of Univ. of Cal. at Davis*, No. CIV S-03-2591 FCD EFB, 2007 WL 4557104, at *5 (E.D. Cal. Dec. 21, 2007) (finding documents predecisional to how college officials would testify before legislature regarding Title IX compliance were "not . . . contemplated by the privilege" and rather were "used to prepare for a post hoc explanation of past actions").

     DFC cites to other courts, many of them in the D.C. Circuit, that regularly exempt from FOIA disclosure requirements agency documents related to public messaging. (Def.'s Opp'n 3 ("[T]hat public messaging is somehow not a sufficiently substantive and important agency decision does not make it any less a *decision*.")); *Am. Ctr. for Law & Just. v. U.S. Dept. of Just.*, 325 F. Supp. 3d 162, 171–72 (D.D.C. 2018) (collecting cases and finding an "overwhelming consensus" in D.D.C. "that the privilege protects agency deliberations about public statements"). To the extent there is a split of authority between the Ninth Circuit and the D.C. Circuit, this Court should follow the circuit by which it is bound. In this circuit, the purpose of the deliberative process privilege is not to protect government discussions in general but to protect "frank discussion of legal or policy matters" in particular from public disclosure. *Maricopa Audubon Soc'y*, 108 F.3d at 1092; *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, No. CV 08-4920-CAS (CTx), 2009 WL 10673061, at *3 (C.D. Cal. Nov. 12, 2009) (defining deliberative process privilege as arising when the "process by which [an agency's] decisions and policies are formulated" is at issue). By DFC's own admission, the documents in Categories 1, 2, and 4 had nothing to do with the process of formulating a policy or decision within DFC's purview; they had to do with

1 deciding how to announce a policy decision already made. In the Ninth Circuit, this observation is fatal to the viability of the deliberative process privilege, and FOIA therefore mandates disclosure of these documents.

DFC argues that, because the documents in Category 1 are drafts of the op-ed, they are predecisional to the final version of the op-ed, (Def.'s Mot. 8–9), but this argument does not change the conclusion. While the draft nature of a document is certainly a factor in determining whether a document is predecisional or deliberative, *Lahr*, 569 F.3d at 983–84, here, the documents—draft or not—relate only to how DFC would announce its decision to lend to Kodak. They are not predecisional to whether DFC would in fact lend money to anyone, nor are they predecisional to any other "legal or policy matter[]" within its purview. *See Maricopa Audubon Soc'y*, 108 F.3d at 1092.

The Court finds that DFC does not meet its burden of showing the deliberative process privilege applies to the documents in Categories 1, 2, and 4. Thus, FOIA Exemption 5 exempts none of these documents from disclosure, and they must be disclosed. As to Categories 1, 2, and 4, DFC's Motion is **DENIED** and NPR's Cross-Motion is **GRANTED**.

## C. Category 3

DFC describes Category 3 as consisting of three emails: one discussing "anticipated topics of discussion for a pending meeting" (document A001) and two containing "anticipated meeting agendas pertaining to the COVID-19 taskforce" (documents A022 and A023). (Styles Decl. ¶ 14; *see also id.* Attachment B A022-A023 (describing these as "COVID huddles").) DFC released these emails in redacted form, and it represents that the undisclosed material indicates "what would be discussed at the meetings and . . . the actual underlying policies being developed and discussed at those meetings." (*Id.*) According to DFC, disclosure of the redacted portions "would reveal opinions, ongoing prioritization decisions, and the content and process of internal deliberations on these topics." (*Id.*) For the following reasons, the

Court finds that the deliberative process privilege applies to documents A022 and A023, but not to document A001.

### 1. Deliberative Process Privilege

In most cases, an agenda for a meeting of a government agency, where the purpose of the meeting is to generally advance the purpose and fulfill the statutory duty of the agency, will be both predecisional and deliberative because the agenda assists in making the policy decisions to be considered at the meeting. *See Ctr. for Pub. Integrity v. Fed. Election Comm'n*, 332 F. Supp. 3d 174, 180 (D.D.C. 2018) ("A meeting agenda prepared before the meeting is predecisional and inherently deliberative in that staff are suggesting the topics to be discussed at the meeting."). Applying this principle to document A001, DFC's declaration indicates only that the document contains "anticipated topics of discussion for a pending meeting." (Styles Decl. ¶ 14.) This is insufficient for the Court to conclude that document A001 is either predecisional or deliberative. Without more information on the nature of the meeting DFC was planning, the Court is without basis to conclude that the meeting related to DFC's core policymaking functions, as opposed to, say, upcoming press conferences regarding a decision already made. If the meeting was only about the DFC's public messaging, then materials preparatory to that meeting were predecisional only to public messaging and therefore not "predecisional" for purpose of the privilege. (*See* § IV.B herein.) It is DFC's burden to show the privilege applies, and DFC fails in this burden. Disclosure of document A001 is required.

By contrast, DFC's declaration is slightly more specific about documents A022 and A023, stating that they are "anticipated meeting agendas pertaining to the COVID-19 taskforce." (Styles Decl. ¶ 14.) The natural inference arising from this evidence is that policy-related decision-making happens at DFC's COVID-19 taskforce meetings, and NPR neither submits evidence nor raises arguments suggesting otherwise. NPR argues that the agendas do not "reveal the formulation of any particular policy," (Pls.' Mot. 17), but as the Supreme Court has cautioned, the


"emphasis on the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared." *Sears*, 421 U.S. at 151 n.18. Thus, DFC's declaration is sufficient to show that these agendas are both predecisional to and deliberative of DFC's policymaking functions. This is especially true given that "[a]n agency's substantive policy decisions are shaped to a significant extent by the logistical decisions it makes"—including decisions embodied in meeting agendas—"during the policymaking process." *Lemieux & O'Neill ex. rel. Las Virgenes—Triunfo Joint Powers Auth. v. McCarthy*, No. CV 16-00570-AB (Ex), 2017 WL 679652, at *5 (C.D. Cal. Jan. 27, 2017).

DFC sufficiently demonstrates that the two meeting agendas (documents A022 and A023) are covered by the deliberative process privilege. The Court proceeds to determine whether DFC shows that, with reasonable foreseeability, it would be harmed by disclosure of these meeting agendas.

### 2. Reasonably Foreseeable Harm

Pursuant to the 2016 amendments to FOIA, even if a government agency shows an exemption applies, disclosure is nevertheless mandated unless the agency also affirmatively explains how "doing so would reasonably harm an exemption-protected interest." *Jud. Watch, Inc. v. U.S. Dep't of Com.*, 375 F. Supp. 3d 93, 100 (D.D.C. 2019); *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 486 F. Supp. 3d 669, 691 (S.D.N.Y. 2020); 5 U.S.C. § 552(a)(8)(A).

To show reasonably foreseeable harm, an agency must do more than "perfunctorily state that disclosure of all the withheld information—regardless of category or substance—would jeopardize the free exchange of information among or between government officials." *Nat'l Day Laborer Org. Network*, 486 F. Supp. 3d at 691–92. At the same time, a "categorical approach" to describing the foreseeable harm is permissible, so long as the proffered categories of harm provide the Court

with a sufficient evidentiary basis to find foreseeable harm to the deliberative process. *Rosenberg v. Dep't of Def.*, 342 F. Supp. 3d 62, 79 (D.D.C. 2018).

Here, DFC's declaration regarding the harm that would arise from disclosure of the meeting agendas is sufficient to demonstrate that disclosure of the meeting agendas would jeopardize the core deliberative process of DFC officials. According to the declaration, these two agendas help DFC decide not only what would be discussed at the meetings but also the "actual underlying policies" DFC developed and discussed at those meetings. (Styles Decl. ¶ 14.) Furthermore, "[d]isclosure would inhibit candid discussions and the ability of interagency stakeholders to broach difficult topics." (*Id.*)

"The deliberative process privilege reflects the commonsense notion that agencies craft better rules"—or, here, craft better financial policy—"when their employees can spell out in writing the pitfalls as well as strengths of policy options, coupled with the understanding that employees would be chilled from such rigorous deliberation if they feared it might become public." *Jud. Watch, Inc. v. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017). Applying this principle here, DFC can make better policy when its employees are free to bring topics to their policymaking meetings for discussion and deliberation without fear that the unpolished, unvetted results of their efforts will one day be open to public scrutiny. In describing these two agendas and the harm that would result from disclosure, DFC makes a sufficient showing of foreseeable harm.

3.  *Conclusions for Category 3*

For the foregoing reasons, the deliberative process privilege <u>does not</u> apply to document A001. As to document A001, DFC's Motion is **DENIED**, NPR's Cross-Motion is **GRANTED,** and disclosure is ordered.

By contrast, the deliberative process privilege <u>does</u> apply to documents A022 and A023, and DFC has shown as a matter of law that foreseeable harm would result from further disclosure. As to documents A022 and A023, DFC's Motion is

**GRANTED**, and NPR's Cross-Motion is **DENIED**, and documents A022 and A023 need not be further disclosed.

### D. Relief for Untimely Production

When NPR filed this suit, DFC had not yet produced any documents, and accordingly, NPR's Complaint focused primarily on the harm arising from DFC's delay in failing to produce any documents whatsoever. (*See generally* Compl.) In its Cross-Motion, NPR now argues that it is entitled to a declaration that, as a matter of law, DFC violated the timeliness requirements of FOIA when it waited until January 2021 to produce records responsive to NPR's July 2020 request. (*See* Pls.' Mot. 18.)

NPR's contention is rejected for two reasons. First, NPR did not assert a claim for untimeliness in its Complaint, nor has it amended its Complaint. Although the Complaint contains language regarding the timeliness requirements of FOIA, the Complaint could not have possibly asserted a separate, standalone claim for damages for late production of documents already produced for the simple reason that no documents had already been produced when NPR filed its Complaint.

Second, "an agency's failure to comply with [FOIA's] statutory deadlines is not an independent basis for a claim." *Roseberry-Andrews v. Dep't of Homeland Sec.*, 299 F. Supp. 3d 9, 20 (D.D.C. 2018); *see Cmty. Ass'n for Restoration of the Env't, Inc. v. U.S. Env't Prot. Agency*, 36 F. Supp. 3d 1039, 1049 (E.D. Wash. 2014) ("That the EPA's determination was not made . . . until nearly a year after the request does not necessarily make the EPA's deficiency actionable under the FOIA."). Instead, "the impact of blowing [FOIA's] 20-day deadline" is simply that the requester gains the right to take his or her FOIA dispute to court. *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 41 (D.D.C. 2014).

The Ninth Circuit does recognize that a FOIA requester states a claim by alleging "that an agency *policy or practice* will impair the party's lawful access to information in the future." *Civ. Beat Law Ctr. for the Pub. Int., Inc. v. Ctrs. for Disease Control & Prevention*, 929 F.3d 1079, 1086 (9th Cir. 2019). NPR makes a

last-ditch effort in its Reply to argue that this is its theory of the case, (Pls.' Reply 12), but this effort is unavailing, as the Complaint in this matter is entirely devoid of any allegations of DFC's pattern or practice of untimely responding.

For these reasons, NPR's Cross-Motion is **DENIED** to the extent NPR seeks relief based solely on the untimeliness of DFC's production.

### E.   In Camera Review

As a final matter, NPR requests in camera review of the documents at issue. (Req.)  The Court has discretion in determining whether to review documents in camera.  *Flocker v. FBI*, No. 10-06753-JAK, 2013 WL 12383752, at *4 (C.D. Cal. Apr. 18, 2013).  In camera review "is used exceedingly sparingly," *Poulsen v. Dep't of Def.*, 373 F. Supp. 3d 1249, 1280 (N.D. Cal. 2019), *overruled on other grounds by Animal Legal Def. Fund*, 836 F.3d 987, and it "should not be resorted to lightly," *Flocker*, 2013 WL 12383752, at *4.

NPR's request is moot as to Categories 1, 2, and 4, as well as to document A001, because the Court is ordering disclosure of these documents.  As for the remaining documents, A022 and A023, based on the foregoing discussion, the Court sees no need for in camera review.  DFC's declaration describes these documents with sufficient particularity, and NPR does not argue that DFC's descriptions provided the Court with insufficient information to make a reasoned decision.  NPR's request for in camera review is **DENIED**.

### V.   CONCLUSION

The Court's determinations herein completely dispose of all remaining issues in the action.  The Court finds that no genuine disputes of material fact exist and both parties are entitled to partial summary judgment as a matter of law on each of their respective Motions.  Each Motion is therefore designated as **GRANTED IN PART and DENIED IN PART**.  (ECF Nos. 28, 29.)

- As to **document A001** and **Categories 1, 2, and 4**, DFC's Motion is **DENIED**, NPR's Cross-Motion is **GRANTED**, and disclosure of all material withheld pursuant to the deliberative process privilege is required.
- As to **documents A022 and A023**, DFC's Motion is **GRANTED**, NPR's Cross-Motion is **DENIED**, and no further disclosure is required.
- NPR's request for summary judgment in its favor on its putative claim for relief for the untimeliness of DFC's response is **DENIED**.

The Court will issue Judgment consistent with this Order.

**IT IS SO ORDERED.**

November 24, 2021

_____
OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE